IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

BOBBY JOE COMPTON,                    :
                                      :
      Plaintiff,                      :
                                      :
v.                                    :        CIVIL ACTION 08-0624-M
                                      :
MICHAEL J. ASTRUE,                    :
Commissioner of                       :
Social Security,                      :
                                      :
      Defendant.                      :


<u>MEMORANDUM OPINION AND ORDER</u>


In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3),
Plaintiff seeks judicial review of an adverse social security
ruling which denied claims for disability insurance benefits and
Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 14).
The parties filed written consent and this action has been
referred to the undersigned Magistrate Judge to conduct all
proceedings and order the entry of judgment in accordance with 28
U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 20).  Oral argument
was heard on June 2, 2009.  Upon consideration of the
administrative record, the memoranda of the parties, and oral
argument, it is **ORDERED** that the decision of the Commissioner be
**AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute
its judgment for that of the Secretary of Health and Human Ser-
vices, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.

1983), which must be supported by substantial evidence. *Richard-son v. Perales*, 402 U.S. 389, 401 (1971).  The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was forty-five years old, had completed a high school education (Tr. 335-36), and had previous work experience as a construction laborer, a stacker, a mover, an orderly, a carpenter's helper, and an auto detailer (*see* Tr. 358).  In claiming benefits, Plaintiff alleges disability due to degenerative joint disease of the lumbar spine, right ankle impairment, headache disorder, depression, and obesity (Doc. 15).

The Plaintiff filed protective applications for disability benefits and SSI on August 30, 2004 (*see* Tr. 17).  Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although he was not capable of performing his past relevant work, Compton could perform specified light and sedentary work jobs (Tr. 14-29).  Plaintiff requested review of the hearing decision (Tr. 11) by the Appeals Council, but it was denied (Tr. 5-7).

Plaintiff claims that the opinion of the ALJ is not

supported by substantial evidence.  Specifically, Compton alleges
that:  (1) The ALJ did not accord proper consideration to the
opinions of one of his treating physicians; (2) the ALJ
improperly relied on the testimony of a non-examining, non-
treating physician and psychologist; (3) the ALJ did not properly
consider the combination of all of his impairments; and (4) he is
not capable of performing a full range of light work (Doc. 14).
Defendant has responded to—and denies—these claims (Doc. 16).
The evidence of record follows.

Records from the Veterans Administration Medical Center in
Tuscaloosa (hereinafter *VAMC*) show that Compton was initially
seen on July 2, 2004, complaining of crack cocaine use for
nineteen years and a daily alcohol habit (Tr. 148-56).
Administration of the Beck Depression Inventory revealed that
Plaintiff had mild-to-moderate depression (Tr. 149).  Compton
stated that he was not in pain and had not been in pain in the
recent past (Tr. 150); he admitted to suicidal ideation, but had
no plans to hurt himself (Tr. 152).  Plaintiff was noted to be
overweight (Tr. 153).  On July 21, Compton stated that he had
been taking prescriptions for citalopram[1] and Trazodone[2] and
that, four years earlier, he had fractured his ankle which causes

---

[1]*Citalopram* is used for treatment of depression.  *Physician's
Desk Reference* 1161-66 (62nd ed. 2008).

[2]*Trazodone* is used for the treatment of depression.  *Physician's
Desk Reference* 518 (52nd ed. 1998).

swelling and pain on frequent walking or standing (Tr. 147).  A week later, looking disheveled, Plaintiff complained of pain at 8 on a ten-point scale;[3] he was noted to be dysphoric (Tr. 144). On August 20, a psychiatric evaluation was completed in which Plaintiff was calm, cooperative, and alert, though somewhat anxious; he was diagnosed to have an adjustment disorder with anxious mood in addition to his depression and alcohol and cocaine dependence (Tr. 136-42).  It was felt that his prognosis was fair with treatment.  Compton admitted that he was still using crack and drinking (Tr. 140).  On August 30, an x-ray of the lumbosacral spine showed minimal curvature to the left and moderate disk space narrowing at the L4-5 level with small anterior spur formation (Tr. 189-90); an x-ray of the right ankle demonstrated an old healed fracture site and mild right first metatarsal joint degenerative joint disease (Tr. 191-94).  On September 22, Plaintiff complained of depression, although he was sleeping 6-7 hours nightly and was having no medication side effects; it was noted that he was ambulatory with a cane (Tr. 132).  Compton stated his pain was 7 and that he was still abusing alcohol and crack (Tr. 133).

On September 29, 2004, Plaintiff underwent a colonoscopy at the North River Surgical Center, during which a polyp was removed (Tr. 157-58).

---

[3]All notes of pain in this report are referenced to a ten-point scale.

VAMC records show that, on November 3-5, Plaintiff underwent an assessment to evaluate his abilities in a detoxification program and, shortly thereafter, he began the program, participating in group and individual therapy sessions (Tr. 195-213).  The records demonstrate that Compton actively participated in the various program functions and seemed to understand what he was being told; the program lasted one month (Tr. 214-60). During that period, Plaintiff complained of dizziness and increasing back pain (level 6) on November 19 (Tr. 233-34); he had been free of alcohol and cocaine eighteen days at this point (Tr. 237).  Antivert was prescribed for the dizziness (Tr. 238); Compton stated that Ibuprofen was effective in eliminating the pain (Tr. 242).  On December 2, Dr. Yoon noted that Plaintiff's right ankle was mildly tender, but not warm with his range of motion only mildly limited; he had mild crepitation of the left knee and his hips were mildly tight (Tr. 252).  On December 10, Compton had been out of the program for one week and had been drug-free, though he had had two beers; it was indicated that he "does not seem to put forth any effort to help himself" (Tr. 260).  Plaintiff was depressed (Tr. 261).

On December 20, 2004, a consultative physical examination was performed by Dr. Huey Kidd, a doctor of osteopathy, who noted tenderness to palpation at the lumbosacral junction, particularly on the left (Tr. 159-62).  "Straight leg raise [was] positive to

about 30 degrees in a seated position on the right that causes pain that goes from his back down into his ankle" (Tr. 160). Compton was unable to heel or toe walk, secondary to pain; he could not bend over and touch his toes.  Kidd noted full range of motion in Plaintiff's back and right ankle; he also said that the cane was required for ambulation as Plaintiff had an antalgic gait (Tr. 162).

On February 11, 2005, Plaintiff was issued a replacement cane by VAMC; he was seen that day for lower back pain (level 7) (Tr. 291).  Compton stated that he had started drinking again in mid-December and had a beer the day before; he drank twelve cans one day (Tr. 292).  His back and ankle pain were relieved with Tylenol; Plaintiff had severely restricted range of motion in the right ankle and was walking with a stilted gait (Tr. 294).  On March 11, Plaintiff was anxious and nervous; judgment was grossly intact and insight was fair (Tr. 284-85).  He was walking slowly, limping with a cane (Tr. 284).  On March 23, Compton complained that his back pain was getting worse; the mid-thoracic spinal muscle was tender, more so on the right than left, so Dr. Yoon prescribed Flexeril[4] (Tr. 281).  On March 31, Plaintiff appeared for an appointment with a wheel walker (Tr. 280).

On June 6, 2006, Plaintiff stated that he might drink four-

---

[4]Flexeril is used along with "rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions."  *Physician's Desk Reference* 1455-57 (48th ed. 1994).

to-six six beers in a week; he said that he was told to use the
walker by Dr. France (Tr. 318).  His only complaint was sexual
dysfunction (Tr. 318).  On June 27, Compton complained of level
seven pain at that time and suicidal ideation and depression for
the past week as he felt like his ex-wife was turning their
children against him; Dr. Tucker noted that he was walking with a
cane (Tr. 314-6).

On October 30, 2005, Dr. David W. Hodo, Psychiatrist,
performed an examination in which he noted that Compton was alert
and sad with appropriate affect (Tr. 297-98).  Hodo noted that
Plaintiff's thoughts were logical, coherent, and understandable
though he described auditory hallucinations.  The Psychiatrist's
diagnostic impression was major depression and alcoholism; he
noted that Compton would be able to manage his own financial
affairs.  Dr. Hodo also completed a mental source opinion form in
which he indicated that Plaintiff was markedly limited in his
ability to do the following:  understand simple, detailed, or
complex instructions; carry out or remember detailed or complex
instructions; respond appropriately to supervision, co-workers,
or customary work pressures; deal with changes in a routine work
setting; respond appropriately to customers or other members of
the general public; use judgment in simple, detailed, or complex
work-related decisions; and maintain attention, concentration, or
pace for periods of at least two hours (Tr. 298-300).  The

Psychiatrist stated that Compton had lived with these restrictions for one-to-two years; he further stated that no psychological evaluation had been completed in making these assessments.  Hodo stated that Plaintiff's allegations of pain were consistent with medical findings, that the pain considerably affected his ability to function, and that medications were helpful "some" (Tr. 300).  Lastly, Compton's condition would deteriorate if placed in a stressful situation.

On November 28, in a telephone request to the VAMC, Plaintiff complained of being dizzy and requested more medication (Tr. 312).  On January 10, 2006, it was noted that Compton was oriented in three spheres and was in no acute distress (Tr. 310). Plaintiff reported tenderness with light palpation in his low back and right ankle, claiming a pain level of eight (Tr. 310-11).  On July 13, Compton stated that he was depressed because he was unable to financially care for his children; he was ambulatory with a cane (Tr. 302).  He claimed a pain level of eight; he was still drinking regularly, up to a six-pack a day if he could get it (Tr. 303).  On September 13, 2006, a CT scan of Compton's cerebellum and midbrain was, essentially, unremarkable (Tr. 324-25).  Plaintiff also underwent an EEG which was normal (Tr. 326).

At the evidentiary hearing, Plaintiff testified that he does no household or yard work chores, that he sleeps and watches tv

8

all day long; he had not worked in nearly three years because of
back and ankle pain which registered at seven-to-eight on a ten-
point scale (Tr. 335-44).  His medications helped, but made him
drowsy and sleepy.  Compton stated that the VA prescribed a cane
and then a walker for him; he stated that he could not walk as
far as a block and could stand up for only five-to-seven minutes.
Sitting causes his back to hurt, so Plaintiff lies down a lot; he
wears a brace for his back daily, prescribed by the VA.  Compton
also suffers from depression.  He once had a problem with cocaine
but does no more; he still drinks two-to-three beers on weekends.
Plaintiff has auditory hallucinations at times and some suicidal
thoughts; he also suffers from headaches and dizziness every
other day or so.

James N. Anderson testified as a medical expert, stating
that he had reviewed all of the medical records and had been
present for Plaintiff's testimony (Tr. 344-48, 366).  Anderson
stated that x-rays demonstrated mild disc disease of the
lumbosacral spine and an old heel fracture of the left ankle,
without any complications, causing him moderate pain; these
impairments would limit Compton to the full range of light work.
Although Plaintiff's medications could cause drowsiness, the
medical records do not reflect any complaints of this nature.
Anderson noted that a cane and walker had been prescribed to help
Plaintiff walk.

9

Doug McKeown testified as a psychological expert, stating that he had reviewed the psychological records of record and had also been present for Compton's testimony (Tr. 348-57). McKeown first summarized the relative record evidence, then noted that Plaintiff had been diagnosed with depression, which was secondary to—or exacerbated by—his alcohol and cocaine abuse. It was the Psychologist's opinion that Dr. Hodo's severe limitations were not supported by the record; he added that the VA records indicated that there was "very limited mental health treatment involved, which essentially is no more than medication monitoring" (Tr. 351). McKeown went through the same form completed by Dr. Hodo and gave his own evaluation of Plaintiff's limitations, finding, at most, only moderate restriction.

Patrick Sweeney testified at the evidentiary hearing as a Vocational Expert (hereinafter *VE*), first testifying of Plaintiff's past work (Tr. 357-). The VE listed the following light jobs, existing in the workforce, which Plaintiff could perform: folding machine operator and inserting machine operator; the jobs of charge account clerk and addresser were sedentary jobs which he could perform. Sweeney stated that Dr. Hodo's assessment would preclude all employment; if Plaintiff's testimony were believed, he would not be able to work. The VE stated that Compton's use of a cane or walker would limit him to the sedentary jobs.

The ALJ summarized the medical evidence of record and determined that Plaintiff could perform a full range of light work, consistent with Dr. Anderson's testimony (Tr. 20).  He determined that Plaintiff did suffer pain and limitations, but not to the extent that he alleged (Tr. 21).[5]  In evaluating the evidence, the ALJ gave great weight to the opinions of the experts who testified at the hearing, Anderson and McKeown (Tr. 26).  He gave no weight to Dr. Hodo's evaluation, finding that it was "in no way consistent with his Mental Medical Source Opinion Form" (Tr. 25).  The ALJ went on to say:

> According to Dr. Hodo, the claimant is marked[ly restricted] in almost every area and has been for one to two years; however, his evaluation relates the claimant to have logical, coherent, and understandable thoughts.  Additionally, he noted the claimant had intact sensorium and could do abstraction fairly readily.  The claimant reportedly had paranoia and hallucinations which had never been mentioned before in any of his records of evidence.  While Dr. Hodo found the claimant to be almost totally marked in every area, and despite the fact that he diagnosed alcoholism and the claimant reported a history of drug use, he then found the claimant would be able to manage financial benefits awarded him?????

(Tr. 25-26).  The ALJ credited the VE's testimony as consistent with the Dictionary of Occupational Titles (Tr. 28).  The ALJ then went on to find that although Compton could not perform a

---

[5]Plaintiff has not challenged the ALJ's finding regarding his credibility.

full range of light work, there were specific jobs at the light and sedentary levels of exertion which he could perform (Tr. 28). This concludes the Court's summation of the evidence.

Plaintiff's first claim is that the ALJ did not accord proper legal weight to the opinions, diagnoses and medical evidence of one of his physicians.  Compton specifically refers to the conclusions of Dr. Hodo (Doc. 14, p. 4).  It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[6] *see also* 20 C.F.R. § 404.1527 (2008).

The Court finds no merit in this claim.  The ALJ is correct in finding that Dr. Hodo's assessment of marked limitation in virtually everything has no parallel support in this record.  The Court also agrees with McKeown's assessment that Plaintiff was not getting mental health treatment, so much as he underwent a detox program for alcohol and cocaine and happened to receive medication regulation along the way.  The Court finds substantial support for the ALJ's conclusion that Dr. Hodo's evaluation has no evidentiary support in this record.

---

[6]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Compton has also claimed that the ALJ improperly relied on
the testimony of a non-examining, non-treating physician and
psychologist (Doc. 14, pp. 4-5).  The Court notes that the
Eleventh Circuit Court of Appeals has held that the opinion of a
non-examining physician "is entitled to little weight and taken
alone does not constitute substantial evidence to support an
administrative decision." *Swindle v. Sullivan*, 914 F.2d 222, 226
n.3 (11th Cir. 1990) (*citing Broughton v. Heckler*, 776 F.2d 960,
962 (11th Cir. 1985)).  Plaintiff refers to the testimony of
Anderson and McKeown who testified as experts at the evidentiary
hearing.

According to the Social Security regulations, ALJ's "may
also ask for and consider opinions from medical experts on the
nature and severity of your impairment(s) and on whether your
impairment(s) equals the requirements of any impairment listed in
appendix 1 to this subpart."  20 C.F.R. § 404.1527(f)(2)(iii)
(2008).  The testimony of these medical experts is supposed to be
evaluated the same as the other evidence of record.  Therefore,
the Court finds that the ALJ committed no error in relying on the
testimony of the two experts as a medical expert is not
considered in the same light as a non-examining physician.[7]

Compton next claims that the ALJ did not properly consider

_____

[7]The Court did find one particular facet of that testimony to be
in error, but that will be taken up in the discussion of Plaintiff's
fourth claim (that he is unable to perform a full range of light
work).

the combination of all of his impairments as he is required to do
(Doc. 14, p. 7).  It is true that "the Secretary shall consider
the combined effect of all of the individual's impairments
without regard to whether any such impairment, if considered
separately, would be of such severity."  42 U.S.C. § 423(d)(2)C).
The Eleventh Circuit Court of Appeals has noted this instruction
and further found that "[i]t is the duty of the administrative
law judge to make specific and well-articulated findings as to
the effect of the combination of impairments and to decide
whether the combined impairments cause the claimant to be
disabled."  *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984);
*see also Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984);
*Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982).

In the ALJ's findings, he lists Plaintiff's impairments and
concludes by saying that he "does not have an impairment or
combination of impairments that meets or medically equals one of
the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix
1" (Tr. 20).  This specific language has been upheld by the
Eleventh Circuit Court of Appeals as sufficient consideration of
the effects of the combinations of a claimant's impairments.
*Jones v. Department of Health and Human Services*, 941 F.2d 1529,
1533 (11th Cir. 1991) (the claimant does not have "an impairment
or combination of impairments listed in, or medically equal to
one listed in Appendix 1, Subpart P, Regulations No. 4").

Compton's claim is without merit.

Plaintiff's final claim is that he is not capable of performing a full range of light work (Doc. 14, pp. 5-7).  Light work has been defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (2008).  Plaintiff argues that his need for a cane or walker to walk eliminates all light work jobs.

Dr. Anderson testified that Plaintiff needed a cane or walker to ambulate but that he was, nevertheless, able to perform a full range of light work (Tr. 346-47).  The VE testified that the need for a cane or walker eliminated light work jobs (Tr. 364-65).  In his decision, the ALJ indicates, fairly early on, that Compton "has the residual functional capacity to perform a full range of light work with up to moderate pain" (Tr. 20).  In his concluding remarks, however, the ALJ states that Plaintiff's

"ability to perform all or substantially all of the requirements of [light] work has been impeded by additional limitations" (Tr. 28).  He goes on to list specific jobs which Compton can perform; two are light work and two require sedentary exertion.

Although the ALJ's finding that Plaintiff can perform two light work jobs contradicts the VE's testimony, the Court finds that it is, at most, only harmless error as the ALJ also listed two sedentary jobs which Plaintiff can perform in spite of his impairments.  This particular finding is unrebutted by any evidence of record.  In light of this conclusion, the Court finds that Plaintiff's claim does not amount to reversible error.

Compton has raised four different claims in bringing this action.  All are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 3rd day of June, 2009.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE